IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRACY SHIBLEY<br>34203 Parkview Road<br>Willoughby Hills, Ohio 44092 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES** |
| GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY<br>1240 West 6th Street<br>Cleveland, Ohio 44113 | ) ) ) ) ) | **(Jury Demand Endorsed Hereon)** |
| Defendant. | ) ) | |

Plaintiff, Tracy Shibley, by and through undersigned counsel, as her Complaint against Defendant, Greater Cleveland Regional Transit Authority, states and avers the following:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 for Shibley's claims arising under 42 U.S.C § 12101(a)(7) (Americans with Disabilities Act ("ADA")).

2. Venue is properly in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (a) the Defendant is located in this judicial district, and (b) a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.

## PARTIES

3. Plaintiff Tracy Shibley is a disabled Willoughby Hills resident, who regularly relies on the Greater Cleveland Regional Transit Authority ("RTA") for transportation. Shibley is an "individual with a disability" within the meaning of all applicable statutes and regulations.

4. At all times material, Defendant RTA was and is a corporation and/or other legal entity duly organized and existing pursuant to the laws of the state of Ohio, and held itself out to the public, including Shibly, as a provider of transportation services.

5. RTA has a rail stop located at 50 Public Square, Cleveland, Ohio 44113.

6. RTA is a recipient of federal financial assistance, including Federal Transit Administration funding, and RTA is therefore subject to the requirements of the ADA.

## FACTUAL ALLEGATIONS

7. Shibley incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

8. In 2011, Shibley was in an automobile accident and sustained a severe spine injury.

9. Due to her spine injury, Shibly is disabled, and physically unable to walk up and down steps unassisted, or raise her legs more than about 7" from the ground.

10. The first step to get on the RTA train is too high for Shibley, which is why she requires the use of the handicapped ramps on the trains and buses.

11. Shibley carries an RTA disability card with her, to ensure that her disability is accommodated, including the use of the handicapped ramps on the trains and buses.

12. On September 3, 2022, Shibley attended a Guardian's game, and arrived at Tower City Station at approximately 11:35pm.

13. Shibly waited for the midnight Green Line train at the top of the handicapped accessible ramp.

14. When the train arrived at Tower City station, it did not pull up far enough for Shibley to enter the train via the ramp.

15. When Shibley asked the driver to move the train so that she could use the ramp, he refused, insisting that the ramp was only for people in wheelchairs and with strollers.

16. The driver left, and instead of moving the train so Shibley could use the ramp, he found another RTA employee who also insisted that the ramp was only for individuals in wheelchairs.

17. Even after Shibley showed both RTA employees her RTA Fixed Route Disability Card, and explained that she was physically unable to climb stairs, they insisted that she could not use the ramp and would have to "find a way" to use the stairs.

18. Shibley was left with the physically painful, and emotionally humiliating option of being "helped" up the stairs by the RTA employees, or being stranded in downtown Cleveland at midnight.

19. Because Shibley is unable to lift her leg high enough to reach the first step, one RTA employee on her right grabbed her leg and forcefully pulled it up and put it down (hard) on the step.

20. This action by the RTA employee caused Shibley to experience significant physical pain.

21. Once on the top step, Shibley started to fall backwards and the two RTA men had to grab her to prevent her from falling.

22. The September 3, 2022 incident caused Shibley so much physical discomfort that she became unable to walk without assistance and a walker, and ultimately became bedridden.

23. By September 13, 2022 Shibley had to seek medical attention from internal medicine.

24. When Shibley did not improve, she was taken by ambulance to ICU at Hillcrest Hospital on September 16, 2022 where Shibley was diagnosed with 2 Pulmonary Embolisms, multiple blood clots in both legs from her thighs down, high blood sugar levels and, infection.

25. When Shibley was eventually discharged from the hospital on September 28, 2022 she began physical therapy and occupational therapy.

26. Unfortunately, on October 11, 2022 Shibley was once again taken to Hillcrest Hospital via ambulance, and hospitalized a second time because she was having difficulty breathing, and had a build-up of fluids in her lungs and body caused by the September 3, 2022 incident.

27. Although Shibley was discharged from the second hospitalization on October 16, 2022 she requires Physical and Occupational therapy, in-home nurse visits, and has follow up appointments with a Kidney Specialist, Cardiologist, Hematologist, Pulmonologist, and Internal Medicine doctors.

## COUNT I:
## TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181 et seq.

28. Shibley incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

29. Shibley's spinal injury substantially limits her major life activities, including her ability to walk up and down steps unassisted, or raise her legs more than about seven (7) inches from the ground.

30. Shibley is an individual with a disability under Title III of the Americans with Disabilities Act.

31. Shibley will likely use RTA's transportation services in the near future and will be harmed by RTA's discriminatory policies and procedures.

32. RTA violated Title III of the Americans with Disabilities Act in numerous ways, including discriminatory actions which occurred when RTA:

   a. Failed to maintain policies and procedures to ensure compliance with Title III of the Americans with Disabilities Act, specifically policies that provide equal access and

  effective communication to individuals with disabilities, 28 C.F.R. § 36.303(a) (2010);

 b. Failed to provide auxiliary aids and services, including use of the handicapped ramp, and to modify policies and procedures to prevent discrimination against Plaintiff, 28 C.F.R. § 36.303(a) (2010), 28 C.F.R. § 36.302(a) (2010);

 c. Excluded Shibley from services of the public entity and denied Shibley the benefit of these services due to her disabilities, 28 C.F.R. § 36.202(a) (2010).

33. RTA had knowledge of its obligations under the Americans with Disabilities Act and was deliberately indifferent to the rights of Shibley.

34. RTA knew that Shibly would be harmed by their failure to provide access to the handicapped ramp.

## COUNT II:
## SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701 et seq.

35. Shibly incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

36. Shibley's spinal injury substantially limits her major life activities, including her ability to walk up and down steps unassisted, or raise her legs more than about seven (7) inches from the ground.

37. Shibley is therefore considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended.

38. RTA is a recipient of federal financial assistance.

39. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to be otherwise discriminated against.

5

40. The employees and staff of RTA who interacted with Shibley had actual knowledge of her disability, yet, Shibley was consistently denied the use of the handicapped ramp.

41. Accordingly, RTA discriminated against Shibley in the equal use of its facilities, and as a result, Shibley experienced physical injury and humiliation in violation of her civil rights.

42. RTA failed to provide services to Shibley as it would have provided a similarly situated non-disabled individual.

43. RTA's policies, practices, and procedures, particularly the actions and omissions described above, violated Shibley's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

44. RTA has discriminated against Shibley by failing to allow her to use the handicapped ramp in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

45. At all times material, the employees, staff, and agents of RTA could have permitted Shibley to use the handicapped ramp.

46. RTA staff knew or should have known that Shibley would be harmed by their failure to allow Shibley use of the handicapped ramp.

47. As a result of RTA's actions, Shibley has been damaged and experienced emotional suffering, pain, and anguish.

48. RTA's actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of Shibley.

**WHEREFORE,** Shibley respectfully prays that this Court grant the following relief against RTA, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that RTA's practices, policies, and procedures have subjected Shibley to discrimination in violation of Title III of the Americans with Disabilities Act, and Section 504 of

the Rehabilitation Act, and permanently enjoin RTA from any practice, policy, and/or procedure which will deny Shibley equal access to and benefit from the RTA's services. This includes entering a permanent injunction ordering the RTA:

a. To cease discrimination against Shibley and all other physically disabled riders;

b. To promulgate and comply with policies and procedures to ensure that the RTA and their staff do not discriminate against individuals who are physically disabled;

c. To promulgate and comply with procedures to ensure that the RTA will provide, and allow use of, handicapped ramps on all trains and busses operated by RTA.

d. To promulgate and comply with procedures to ensure that the RTA will notify individuals who are physically disabled of their right to use handicapped ramps. This notification will include posting explicit and clearly worded notices that state that the RTA will provide access to the handicapped ramps to all physically disabled individuals;

e. Award compensatory damages to Shibley;

f. Award reasonable costs and attorneys' fees; and

g. Award any and all other relief that may be necessary and appropriate.

Respectfully Submitted,

/s/ *Claire I. Wade*
Claire I. Wade (0093174)
Sobel, Wade & Mapley, LLC
55 Erieview Plaza, Ste 370
Cleveland, Ohio 44114
T: (216) 223-7213
F: (216) 223-7213
wade@swmlawfirm.com

*Counsel for Plaintiff Tracy Shibley*

## JURY DEMAND

Plaintiff Tracy Shibley demands a trial by jury by the maximum number of jurors permitted.

/s/ *Claire I. Wade*
Claire I. Wade (0093174)

*Counsel for Plaintiff Tracy Shibley*